GIBBONS *v.* WARD.

Opinion delivered November 2, 1914.

1. WILLS—DEATH OF DEVISEE—LAPSED DEVISE.—A legacy or devise lapses when the legatee or devisee dies before the testator and becomes part of the residuary estate, passing under the clause of the will disposing of the residuum.

2. WILLS—CODICIL—LEGAL EFFECT.—A codicil is, in legal effect, a republication of the will, and the whole is to be construed together as if executed at the date of the codicil.

3. WILLS—LAPSED LEGACY OR DEVISE—REPUBLICATION.—The republication of a will does not revive a devise or legacy which has lapsed by the death of the devisee or legatee in the testator's life time.

4. WILLS—LAPSED DEVISE—REPUBLICATION.—Deceased devised certain property to his wife. After the death of the wife deceased republished the will by the excution of a codicil. *Held*, under the facts, the republishing of the will did not have the effect to revive the devise which had lapsed on account of the death of the wife, and which had become part of the residuary estate.

5. WILLS—DEVISE TO A. AND HER HEIRS—LAPSE.—Where the devise was to the wife "and her heirs" under the facts as above stated; *held*, the death of the wife worked a lapse of the devise, and the property became part of the residuary estate.

6. WILLS—PARTIAL INTESTACY—PRESUMPTION.—It will be presumed that a testator disposed of his entire estate, and a will will be construed so as to avoid partial intestacy unless the language thereof compels a different construction.

7. WILLS—LAPSED DEVISE—RESIDUUM—INTESTATE PROPERTY.—Where a devise to A. and her heirs, together with the devise in the residuary clause of a will, lapsed, the lapsed devise of the residuary estate becomes intestate property, unless from the terms of the will an unmistakable intention appears that it shall not.

8. WILLS—DEVISE TO A. AND HER HEIRS—LAPSE—RESIDUUM.—Deceased devised land to A. and her heirs, A. was also to share in the residuary estate. A. died before the testator, who republished the will by a codical, reciting A.'s death and without changing the residuary clause as first written; *held*, under the facts, the testator intended to give the whole of his residuary estate to the residuary

legatees living at his death; and *held*, that the heirs of A. took nothing under the will.

Appeal from Garland Chancery Court; *J. P. Henderson*, Chancellor; affirmed.

*Rector & Sawyer*, for appellants.

1. The will was republished by the codicil and made to speak as of the date of the codicil, and will and codicil must be construed as one instrument. (2) The will and codicil so construed as one will be so construed as to prevent intestacy, or even partial intestacy; the devise did not lapse. After careful search we find but one case identical with this, and if accepted as authority, it absolutely confirms our contention. 6 Dana (Ky.) 51-54; see also Redfield on Wills 371 (1864); 30 Neb. 149; 27 Am. Stat. 391; 28 N. Y. 375; 64 Am. Dec. 731; 64 N. E. 1038; 98 Mass. 65; 199 N. Y. 569; 2 Fed. 138; 90 Ark. 155; 179 U. S. 606; 1 Underhill on Wills 455; 104 Ark. 448; 35 Am. St. 855. The word "heirs" is not always to be construed as a word of limitation. 8 Pa. (8 Barb.) 498; 1 Sanc. Law Rev. 307; 2 Dem. Sur. 570; 1 Bush. 522; 68 Ark. 371. The *Galloway* v. *Darby* case (105 Ark. 561) does not control here. 6 Dana (Ky) 51-54.

2. When the language of a will admits of two constructions, one of which would render it void and the other valid, it is to be presumed that the testator's words were used in the sense which would give them legal effect. 35 N. Y. 162; 49 Am. Dig. 1058-9; 9 N. J. Eq. 21; Am. Dig. 1021.

3. Proof of the situation and circumstances of a testator and his family, or his property and legatees, etc., are always admissible to aid in a proper construction of the will. 44 Am. St. 87; Am. Dig. pp. 1127-1134; Cent. Ed., Am. Dig., vol. 49, pp. 1058-9, and cases; 24 Tex. 643; 25 Ga. 352; 55 N. C. 420; etc. The testimony is conclusive that the intention was that the wife's side should share in the distribution. Where words are used which show that a technical meaning was not intended, or the peculiar circumstances demonstrate clearly that the

words were meant otherwise than in the technical sense. then it should be so construed by the courts.105 Ark. 567.

*M. S. Cobb,* for Isabella Phillips, appellee.

1. Every point raised is controlled by *Galloway* v. *Darby,* 105 Ark. 558, unless the codicil takes it out of the rule. The question of partial intestacy and as to whether lapsed and void devises fall into the residuary clause; the intention of testator and all others, except this one, have been settled. 105 Ark. 555.

2. 6 Dana (Ky.) 51-54 is not an authority under the facts here. Kirby's Dig., § 8022. There are many exceptions to the rule that revival or republication by codicil brings the will down to the date of republishing, etc. Republication does not revive a devise or bequest which has lapsed by death. 52 Pa. St. 326; 8 *Id.* 498; 4 T. R. 601; 40 Cyc. 1221; 14 Pick. (Mass.) 318; 48 S. W. 263. A legacy or devise lapses when the legatee or devisee dies before the testator. 105 Ark. 563.

3. As to revivor of lapsed devises, etc., by republication of a will by codicil see 52 Eng. Reprint 1094, 567; 61 *Id.* 627.

*J. W. Denby* and *J. H. Denby, pro sese.*

1. The property given to Mary E. Skeif by the will lapsed on her death, but the property did not fall into the residuum and pass to the residuary legatees. 105 Ark. 558; 223 Ill. 535; 7 Eng. Ann. Cases 126. The presumption against intestacy is not stronger than the rule requiring express words, or necessary implication to disinherit an heir. 228 Pa. St. 248; 77 Atl. 450; 20 A. & E. 1288. The presumption is that testator intended that his property should go where the law casts it, and to interrupt the law of descent should require plain words to that effect. 12 Ga. 155; 56 Am. Dec. 451; 24 Ga. 372; 2 Woerner on Adm. (2 ed.) § 418; 1 Jarm. on Wills 532; 49 Me. 288-291.

2. A general residuary clause will not dispose of a lapsed interest in the residuary estate. 201 N. Y. 1089; 94 N. E. 990; Underhill on Wills 541; 125 S. W. 1178; 60 Ky. (Metc.) 155. When a devise fails because of lapse

\* \* \* the property devolves on the heirs as intestate real property. 125 S. W. 1178.

KIRBY, J.   This appeal calls for the construction of the last will of Jeremiah W. Skeif, who died in Hot Springs, Arkansas, Garland County, the owner of a considerable estate.   The will was executed on the 24th day of June, 1902, and thereafter the testator added a codicil, of date the 29th day of March, 1907.

The first clause of the will reads: "I, Jeremiah W. Skeif, of Hot Springs, County of Garland, and State of Arkansas, declare this to be my last will, hereby revoking all wills and testamentary papers at any time heretofore made by me.

"I.   I direct all my just debts to be paid.

"II.   I bequeath to my wife, Mary E. Skeif, all my household goods, furniture and other effects which at the time of my death may be in or about my dwelling house."   In item III. he gave a certain lot, described, to the use of his wife, Mary E. Skeif, during her life and after her death to Andrew Jackson Dalton, his heirs and assigns forever.

In item IV. he devised another lot to the use of his wife, Mary E. Skeif, as in item III. for life and after her death to John H. Adams and his heirs and assigns forever.   In item V. he gave two other lots to the use of his wife, Mary E. Skeif, during her life and after her death to Jeremiah Brown, his heirs and assigns forever. In item VI. he devised another lot to the use of his wife, for life and after her death to his two sisters, Isabel Phillips and Sallie M. Bohall, their heirs and assigns forever, in equal shares as tenants in common.   Item VII, devised another lot to the use of his wife for life and after her death to Jeremiah Denby, his heirs and assigns forever.   Item VIII. reads: "I devise to my wife, Mary E. Skeif, her heirs and assigns forever, the following described property situated in the city of Hot Springs," \* \* \* (describing it) and I direct that my wife apply such part of the monthly income of the premises described in items III, IV, V, VI and VII, as

shall be necessary to pay all taxes and assessments thereon, to keep and maintain reasonable insurance and all needful and necessary repairs; and in case of fire should destroy any part of said premises, that the insurance be applied to repair or rebuild the same.

"IX. I devise and bequeath all the residue of my real and personal estate, whatsoever and wheresoever, unto the said Andrew Jackson Dalton, John Adams, Jeremiah Brown, Isabel Phillips, Sallie M. Bohall, Jeremiah Denby and Mary E. Skeif, their heirs, executors, administrators and assigns, according to the nature thereof, respectively, in equal shares, for their absolute use and benefit."

Fred D. Ward and Andrew Jackson Dalton were named executors of the will. The codicil reads: "I, Jeremiah W. Skeif, aforesaid, do declare this to be a codicil to my last will, in addition to the said last will and as a part thereof." It then recites the fact that he has sold the property described in item III of the will, and "my said wife, Mary E. Skeif, being dead, I give and bequeath the following premises situated in the city of Hot Springs, county of Garland, and State of Arkansas, towit:" Then follows the description of lot three (3) block seven (7) of South Hot Springs and the west half of lot number four (4) and all of lot number five (5) in Orr's subdivision in 117, according to the official plat, to Andrew Jackson Dalton, his heirs and assigns forever.

The will was probated and suit was brought against the executors, the devisees of the will and the heirs of Mary E. Skeif to foreclose a mortgage, upon certain after-acquired real estate.not included in the will. Pending that suit there arose a contention between the devisees in the will and the heirs of Mary E. Skeif as to the ownership of the funds in the hands of the executors and they filed an intervention and cross complaint in said suit making the devisees and her heirs parties, in which they allege that there is a disagreement as to the proper construction of said will as follows:

"It being claimed on the one hand that certain legacies and devises designated in said will in favor of Mary E. Skeif have descended to her heirs by reason of the death of the said Mary E. Skeif in the lifetime of the said Jeremiah W. Skeif, and on the other hand that said legacies and devises have lapsed and become residuary estate," and ask for a proper construction of the will and directions as to how to distribute the estate. To their complaint separate answers were filed by the devisees and heirs of Mary E. Skeif.

Mary E. Skeif, the wife of the testator, died during his lifetime and he thereafter made a codicil to his will in which he recited her death and made other disposition of some of the property that had been devised to her and her heirs.

(1) In *Galloway* v. *Darby*, 105 Ark. 558, the court considered the questions involved here and in an exhaustive opinion held that a legacy or devise lapses when the legatee or devisee dies before the testator and becomes part of the residuary estate, passing under the clause of the will disposing of the residuum. It was there said: "The rule is established beyond controversy, except where changed by statute, that a legacy or devise lapses when the legatee or devisee dies before the testator," reciting also that the rule has been changed in this State by section 8022, Kirby's Digest, "in case of a devise to a child or other descendant of the testator, which does not lapse but vests as if such devisee or legatee had survived the testator and died intestate." In that case the testatrix devised her property, making certain specific devises, giving one farm to a niece, Elizabeth Darby, and to her heirs and assigns, in fee simple. She later made a codicil to the will revoking a certain devise to a nephew and devising some of the property, that had been devised to him in the clause revoked, to the same niece, Elizabeth Darby and her heirs and assigns in fee simple. This devisee died during the life of the testatrix and it was contended there, as here, that it was the intention of the testatrix to substitute the

children and heirs of the devisee in her place in the event of her death before that of the testatrix, but the court held otherwise and construing the word "heirs" said, "But words used in a will must be construed according to the technical legal meaning, unless explanatory words in the context qualify them or give them another meaning, or unless the peculiar situation under which they are used indicate an intention to use them other than in a technical sense," and continued, quoting from *Johnson* v. *Knights of Honor,* 53 Ark. 255, where the court was construing the same words; "It is a technical word. When used in any legal instrument and there is no context to explain it, as in this case, it should be understood and used in its legal and technical sense." See also *Myar* v. *Snow,* 49 Ark. 129; *Moody* v. *Walker,* 3 Ark. 147; Underhill on Wills, 436; 2 Redfield on Wills,* 160. The devises were made in items three, four, five and six, of the will to Mary E. Skeif during her life, and "after the death of my said wife I devise the said premises to ———," naming each different devisee, "his heirs and assigns forever." In item eight, the devise was to Mary E. Skeif, her heirs and assigns forever, and evidently intended to convey the entire or fee simple estate. There are no inconsistent words used in this will that would indicate even that the testator did not mean to use technical words in their usual and proper sense. They were evidently so used and intended to mark the extent of the interest to be conveyed to the legatee or devisee, and are words of limitation merely, and we hold her, as in that case, that the devise to Mary E. Skeif lapsed unless it was revived by the codicil reciting her death.

(2) The testator therein did not attempt a disposition of any of the estate to the heirs of Mary Skeif, but did devise certain property, that had been given to her in fee simple in clause eight of the will, to one of the devisees to whom he had given a remainder in certain property in another clause of the will, after the death of his wife, which property had been sold by him. "A codicil is, in legal effect, a republication of the will, and

the whole is to be construed together as if executed at the date of the codicil." 40 Cyc. 1221; *Hawke* v. *Euyart*, 30 Neb. 149, 46 N. W. 422, 27 Am. St. Rep. 391; *Van Alstyne* v. *Van Alstyne*, 28 N. Y. 375; *Drayton* v. *Rose*, 7 Rich. Eq. 328; 64 Am. Dec. 731, Am. Dig. vol. 49, p. 621.

(3) 40 Cyc. 1215, says: "As a general rule revival or republication brings the will down to the date of the republication and makes it speak as of that time." * * * "There are, however, well defined exceptions to the above rule. For instance, it is well settled that the republication does not revive a devise or legacy which has lapsed by the death of the devisee or legatee in the testator's lifetime." See also *Williams* v. *Neff*, 52 Pa. St. 326; *Campbell* v. *Jamison*, 8 Pa. St. 498; *Neal* v. *Hodges*, 48 S. W. 263.

(4) This codicil mentioning the wife's death, and disposing of some of the property that had been given to her in fee simple in clause eight, contained no words indicating an intent to substitute for her those who were to succeed to the property by the terms of the will after her death as devisee, and there are no qualifying words indicating that a technical meaning was not intended, nor any peculiar circumstances in connection with the words used that even tend to demonstrate that they were meant otherwise than in their technical sense. The republishing of the will by the execution of the codicil did not have effect to revive the devise which lapsed on account of the death of Mary E. Skeif, and became part of the residuary estate.

(5) Counsel urge that the word "heirs" should be differently construed and held to be words of purchase and not limitation within the authority of *Davis' Heirs* v. *Taul and Wife*, 6 Dana (Ky.) 51-54. That was a case where the testator who had devised land to his son, William Davis, and his heirs, and appointed him executor, after the son's death added a codicil to the will in which he refers to the death of his son and, without making any other disposition of the land devised, appointed another executor in his stead and the court held that the codicil was a republication of the will and the whole of

it must be construed together and that the devise to the deceased son lapsed, but that his heirs took immediately under the will as purchasers; that the testator intended it, and it was construed to be, a devise to the heirs of his deceased son. Our statute, section 8022, Kirby's Digest, already referred to, prevents the lapse of a devise of the kind passed upon in the Kentucky case, providing that whenever any estate shall be devised or bequeathed to a child or other descendant of the testator who shall die in the lifetime of the testator, leaving a child or other descendant who will survive the testator, that the legacy or devise shall not lapse but shall vest in the surviving child or other descendant of such devisee or legatee as though such devisee or legatee had survived the testator and died intestate. Although there does not appear to have been any statute of Kentucky at the time of this decision with a provision of like kind, that court was doubtless moved to the construction of the will given it out of the same consideration that prompted our Legislature to make the statute with the end in view to prevent the lapse of a devise or legacy to a child or other descendant of the testator dying in the testator's lifetime in order that it should go on down the line from the testator to the child or other descendant of the devisee who survived the testator. We do not regard the case authority for a different construction of this will than that given it.

(6) It is further insisted that this construction of the will contravenes the well known rule that that construction should be adopted which will prevent the testator dying intestate as to any of his property. It is true that the testator is presumed to dispose of his entire estate, and it is to be borne in mind in the construction of wills that they are to be so interpreted as to avoid partial intestacy unless the language compels a different construction. *Booe* v. *Vinson,* 104 Ark. 448; *Badgett* v. *Badgett,* 115 Ark. 9. In *Kenady* v. *Sinnott,* 179 U. S. 606, the court said: "Another familiar rule is that the law prefers a construction which will prevent a partial in-

testacy to one that will permit it, if such a construction may be reasonably given." The authorities also hold, "Where a lapse takes place in the gift of the residue because the sole residuary beneficiary had predeceased the testator, or because of several residuary beneficiaries who take as tenants in common have died before him, the gift which lapses is not reabsorbed into the residue but goes as intestate property, either to the heirs or the next of kin of the testator, according to the nature of the property." 1 Underhill on Wills, volume 1, page 455; Page on Wills, 595, 882.

(7-8) "A general residuary clause will not dispose of the lapsed interest in a residuary estate." In re *Hoffman's Will*, 201 N. Y. 247, 94 N. E. 990. The presumption, however, that the testator intends to dispose of all his estate and not die intestate as to any part thereof does not, of course, authorize the making of a new will or the inclusion of property that can not be brought within the terms of the one made. *Andrews* v. *Applegate*, 223 Ill. 535. Under this construction the specific devise to Mary E. Skeif and her heirs, as well as the devise in the residuary clause, lapsed, and, according to the authorities, the lapsed devise of the residuary estate would become intestate property unless, from the terms of the will an unmistakable intention appears that it shall not. The republication of the will by the codicil reciting the death of Mary E. Skeif without changing the residuary clause as first written, and without any further disposition of the residue of the estate manifests an unmistakable intention upon the part of the testator to give the whole of the residue of his estate to the other residuary devisees who were living at the time of his death. By the terms of the will he had already by specific devises, and by the general devise in the residuary clause to certain of them, made provision for all of his relatives whom he expected to share in the distribution of his estate or to succeed to any part thereof, and this evident purpose of the testator can not be defeated by any rules

of construction, which are only effective to arrive at the true intent of the maker of the will.

It follows that the heirs of Mary E. Skeif were not entitled, under the will, the devises to her and her heirs having lapsed, to any portion of the testator's estate, and the entire estate having been disposed of by the terms of the will, that his other heirs who were not provided for therein are likewise without any right to distribution. The decree of the chancellor was correct and it is affirmed.