QUATTLEBAUM *v.* THE SIMMONS NATIONAL BANK, ADMR.

4-7510                          184 S. W. 2d 911

Opinion delivered January 22, 1945.

*Coleman & Gantt,* for appellant.

*Sam M. Levine* and *M. L. Reinberger,* for appellee.

HOLT, J.   J. D. Quattlebaum died testate in March, 1943. His will was as follows: "Pine Bluff, Arkansas, February 13, 1924. State of Arkansas, County of Jefferson, Know All Men by These Presents: That I, J. D. Quattlebaum, of the county of Jefferson and the State of Arkansas, being in good health, of sound and disposing mind and memory, and above the age of twenty-one years, do make and publish this my last will and testament.

First: I give and devise all my property both real and personal as follows: Five hundred to my niece, Louella Wright, one thousand dollars to my nephew, Albert J. Wheat, five hundred dollars to my niece, Catherine Minor, one thousand dollars to my niece, Mrs. Emma Long, and the rest of my estate to be given as follows: To my sister, Mrs. Ada E. Barrett, one thousand dollars and balance of my estate divided between my two brothers equally, to Lee M. Quattlebaum and Lawrence M. Quattlebaum. I appoint Lee M. Quattlebaum as administrator without bond to divide the estate as above stated. (Signed) J. D. Quattlebaum."

Mrs. Emma Long (a niece of the testator) and his two brothers, Lee M. Quattlebaum and Lawrence M. Quattlebaum, predeceased the testator, J. D. Quattlebaum. The Simmons National Bank of Pine Bluff, as administrator with the will annexed, filed petition in the Jefferson probate court for an order of distribution of the estate of the testator, or for directions as to the persons entitled to share in the distribution, and their respective shares. It therefore became necessary for the trial court to determine the meaning of the will in question, and the intention of the testator, and the disposition to be made of legacies provided for relatives who had predeceased the testator.

In effect, the probate court held that the legacies to Mrs. Emma Long and the testator's two brothers, Lee M. Quattlebaum and Lawrence M. Quattlebaum, lapsed at their deaths, which were prior to that of the testator, and that the remainder of the estate, after the payment of the specific legacies, should be distributed as though J. D. Quattlebaum had died intestate. This appeal followed.

Appellants say: "The question presented by this appeal is whether the bequest of the remainder of the estate to Lee M. Quattlebaum and Lawrence M. Quattlebaum lapsed, and, if so, whether any one except the appellants, who are their children, is entitled to share in the distribution of such remainder."

68

On the question of interpretation and construction of a will, the general rule, running through a long line of our cases, is that it is only where there is some ambiguity or doubt as to the meaning of the language used in the will that recourse to judicial interpretation or construction is justified.

In the recent case of *Dickens* v. *Tisdale*, 204 Ark. 838, 164 S. W. 2d 990, we said: "All the cases are to the effect that the primary purpose of construing a will is to arrive at the testatrix's intention in making it, and the rule of construction applicable in all cases is that the will should be read in its entirety, from its four corners, as many cases express the thought; and also in *Bowen* v. *Frank*, 179 Ark. 1004, 18 S. W. 2d 1037, where it is said: 'The purpose of construction of a will is to ascertain the intention of the testator from the language used, as it appears from consideration of the entire instrument, and, when such intention is ascertained, it must prevail, if not contrary to some rule of law, the court placing itself as near as may be in the position of the testator when making the will' " (and cases there cited).

The text writer in Thompson on Wills, 2d Ed., § 210, says "The purpose of construction and interpretation being the ascertainment of the testator's intention, it follows that where such intention is expressed in the will in clear and unequivocal language, there is no occasion for judicial construction and interpretation, and it should not be resorted to or allowed," and in *Duensing* v. *Duensing*, 112 Ark. 362, 165 S. W. 956, this court said: "The cases all agree that the testator's intention can be gathered only from the will itself and that extrinsic evidence is not admissible to prove an intention in regard to the disposition of the property not expressed in the will."

The trial court refused to consider testimony on the question of the testator's intention, and we think correctly so, for the reason that the language used in the will needs no interpretation. The meaning intended is clear, simple and unambiguous. The will clearly and simply names certain beneficiaries and the amount that each is

to receive. Two of the testator's brothers are named as residuary legatees. There is no provision by which any other person is named as a substituted beneficiary in the event that any of the named legatees predecease the testator. Clearly there was no disposition or attempt to dispose of the residuum of the estate. In these circumstances, the bequests to Mrs. Emma Long, and to Lee M. Quattlebaum and Lawrence M. Quattlebaum lapsed, and the residue of the estate, after the payment of specific legacies, was, as the court held, subject to distribution as though the testator had died intestate.

In *Galloway* v. *Darby,* 105 Ark. 558, 151 S. W. 1014, 44 L. R. A., N. S., 782, Am. Cas. 1914D, 712, this court said: "The rule is established beyond controversy, except when changed by statute, that a legacy or devise lapsed when the legatee or devisee dies before the testator." See, also, *Gibbons* v. *Ward,* 115 Ark. 184, 171 S. W. 90.

In Page on Wills (Lifetime Edition), Vol. 4, § 1430, the author says: "If the residuary gift itself lapses, such lapsed gift does not form a new residuum in the absence of specific language showing that this is testator's intention. If there is one residuary legacy, and such legacy lapses, it passes to the heir or next of kin as intestate property if there is no gift over." The Galloway-Darby and Gibbons-Ward cases, *supra,* are cited in support of the text, and in Thompson on Wills (2d Ed.), p. 581, § 491, we find this language: "In the absence of a statute to the contrary, the death of a beneficiary before the testator caused the gift to lapse, and it was immaterial whether or not the testator had knowledge, in his lifetime, of the death of such beneficiary."

Nor do we think that any beneficiaries of specific legacies are precluded from receiving any part of the residuum because some other pecuniary bequest might have been given to them under the will. We find nothing in the will restricting any of the donees of specific gifts to the amount specifically left to them.

The rule seems well settled that "The fact that a person is a beneficiary under the will does not exclude him from taking as heir or distributee, property as to which the testamentary disposition has failed, even though the gift which failed was to him." 69 C. J. 1071, § 2306, and "The fact that a person is disinherited by the will does not prevent his sharing, as heir at law or distributee, in property, a legacy or devise of which has failed by lapse." 69 C. J. 1070, § 2304.

Finding no error, the judgment in all things is affirmed.