Eugene FARR *et al.* *v.* James M. HENSON, Jr.

CA 01-1236                                    84 S.W.3d 871

Court of Appeals of Arkansas
Division I
Opinion delivered September 11, 2002
[Petition for rehearing denied October 30, 2002.]

*Nash Law Firm, P.A.*, by: *J.R. Nash*, for appellant.

*Jack R. Kearney*, for appellee.

TERRY CRABTREE, Judge. This appeal concerns the validity of an *inter vivos* trust and deed created by Mary Lula Deadmon, who died in July 1999 at the age of ninety-seven. Mrs. Deadmon had no children. Appellants Eugene Farr, Raymond Farr, and Johnnie Farr are nephews of Mrs. Deadmon, as is appellee, James Henson. Mrs. Deadmon suffered from many physical ailments and was diagnosed with severe dementia in 1996. Eugene lived with her and took care of her daily needs for the last three years of her life. Appellee took Mrs. Deadmon to her doctor appointments. In October 1998, appellee took her to attorney Mark Grobmeyer's office to execute the trust and deed that are at the center of this dispute. (Mrs. Deadmon had worked for Mr. Grobmeyer's family for many years before she retired.) Appellee made the arrangements for the visit with Mr. Grobmeyer and drove her there. According to Eugene, appellee did so in secret. After Mrs. Deadmon died, her family learned of the existence of the trust and deed. Mrs. Deadmon placed all of her property in the trust to be used for her care during her life and appointed appellee as trustee. The trust provided that the residue would go to appellee. In the deed, she conveyed her real property to appellee as trustee.

Appellants filed this action to set aside the trust and deed on the grounds that appellee had procured them; that Mrs. Deadmon executed them under undue influence; and that she lacked the mental capacity to validly execute them. They also contended that the trust violated the rule against perpetuities. The trial judge found that appellants failed to establish that appellee procured the trust and deed or that Mrs. Deadmon lacked the requisite mental capacity to execute them. She also held that the trust and deed did not violate the rule against perpetuities. She made no finding on the issue of undue influence.

### Arguments

Appellants make the following arguments on appeal: (1) the trial judge erred in holding that the trust and deed do not violate the rule against perpetuities; (2) the trial judge erred in finding

that appellee did not procure the trust and deed; (3) the trial judge erred in refusing to permit appellants to fully examine the drafting attorneys (Mr. Grobmeyer and Joe Polk) about Mrs. Deadmon's medical diagnosis of dementia; (4) the trial judge erred in refusing to admit evidence of appellee's actions with regard to another elderly relative and of his allegedly untrue statements in an affidavit; (5) the trial judge erred in refusing to admit evidence of Mrs. Deadmon's attempt to make a will in 1990.

## The Rule Against Perpetuities

The trust provides that the property held by the trustee is to be used for Mrs. Deadmon's benefit. After her death, the property is to be used to pay her funeral expenses, debts, and the costs of administration of her estate. Upon Mrs. Deadmon's death, the residue of the trust property shall be distributed to appellee. The trust also contains a *"Perpetuities Savings Clause,"* which states:

> Notwithstanding any provision in this Trust to the contrary, every trust or share created herein shall in any and all events terminate within twenty-one (21) years, less one (1) day, after the death of the last survivor among the group composed of the Grantor, and all of the Grantor's descendants. Upon such termination, the income beneficiary or beneficiaries for whom any property is then held in trust pursuant hereto shall receive such property outright and free of trust.

The Constitution of Arkansas forbids "perpetuities" but does not describe them. Ark. Const. art. 2, § 19. Common law prohibits the creation of future interests or estates that by possibility may not become vested within the life or lives in being at the time of the effective date of the instrument and twenty-one years thereafter. *See Nash v. Scott*, 62 Ark. App. 8, 966 S.W.2d 936 (1998). The interest must vest within the time allowed by the rule; if there is any possibility that the contingent event may happen beyond the limits of the rule, the transaction is void. *Otter Creek Dev. Co. v. Friesenhahn*, 295 Ark. 318, 748 S.W.2d 344 (1988); *Comstock v. Smith*, 255 Ark. 564, 501 S.W.2d 617 (1973).

Appellants argue that the following possible scenarios cause the trust to violate the rule against perpetuities:

(1) Appellee dies before Mrs. Deadmon, and Mrs. Deadmon adopts a child not yet born at the time that the trust is created. We disagree. If appellee dies before Mrs. Deadmon, his interest will simply lapse. *See Scholem v. Long,* 246 Ark. 786, 439 S.W.2d 929 (1969). Therefore, no interest would vest outside the time prescribed by the rule against perpetuities.

(2) Mrs. Deadmon's estate might not be administered until a point in time beyond the lives in being at the time of the effective date of the trust plus twenty-one years. Again, we disagree. By the terms of the trust, appellee's interest will vest upon Mrs. Deadmon's death, which is clearly within the required time. The date when her estate might be administered is, therefore, irrelevant.

█ Accordingly, we affirm the trial judge's decision regarding the rule against perpetuities.

### Whether Appellee Procured the Trust and Deed

The trial judge made a preliminary finding that appellee had procured the documents and requested briefs from the parties. In a post-trial brief, appellee's attorney made the following erroneous statement of the law: "The 'procurement' which is frowned upon by law is that 'undue influence which results from fear and coercion so as to deprive the testatrix of free will.' *Matter of the Estate of Davidson* [310 Ark. 639, 839 S.W.2d 214 (1992)]." That case, however, does not support appellee's attorney's statement about procurement. Instead, it states: "Undue influence sufficient to void a will must not spring from natural affection but must result from fear and coercion so as to deprive a testatrix of free will and direct the benefits of the will to particular parties." 310 Ark. at 645, 839 S.W.2d at 217. Appellants are, therefore, correct that one does not have to prove undue influence in order to prove procurement.

█ We disagree, however, with appellants' contention that the trial judge must have adopted appellee's attorney's erroneous interpretation of the law regarding procurement because she changed her mind about whether appellee procured the trust and deed. The judge did not state that she believed that one must

prove undue influence in order to establish procurement. The judge also made no finding regarding undue influence. She simply stated that appellee did not procure the documents. Therefore, the controlling issue is whether the judge's finding that appellee did not procure them is clearly erroneous. We will not reverse a finding of fact by the trial judge unless it is clearly erroneous. *Nielsen v. Berger-Nielsen*, 347 Ark. 996, 69 S.W.3d 414 (2002). Our review of the evidence convinces us that the trial judge clearly erred in finding that appellee did not procure the documents.

It is true that Mrs. Deadmon had a long-standing relationship with Mr. Grobmeyer. However, Mrs. Deadmon, at the age of ninety-seven, had many physical problems and had been diagnosed as having severe dementia. She was completely dependent upon her relatives for every aspect of her life. Appellee arranged for Mrs. Deadmon to visit the attorneys for the purpose of executing the trust and deed and drove her to their office. The attorneys billed appellee for the work. Also, appellee did not inform the attorneys that Mrs. Deadmon had been diagnosed as having severe dementia. Clearly, appellants proved that appellee procured the trust and deed. We therefore reverse on this issue and remand for further proceedings consistent with our decision.

### Limitation of Cross-Examination

Appellants also argue that the trial judge improperly limited their cross-examination of Mr. Grobmeyer and Mr. Polk about Mrs. Deadmon's dementia. Appellants point out that the trial judge allowed them to state their personal opinions about her mental capacity but restricted appellants from fully questioning them about the likely impact of her dementia on her ability to execute the trust and deed.

Cross-examination is a leading and searching inquiry of a witness for further disclosure touching particular matters detailed by him in direct examination. *Washington Nat'l Ins. Co. v. Meeks*, 249 Ark. 73, 458 S.W.2d 135 (1970). Cross-examination serves to sift, modify, or explain what has been said in order to develop facts in a view favorable to the cross-examiner. *Id.* Its

objects include weakening or disproving his adversary's case, breaking down his testimony in chief, testing his veracity, accuracy, and honesty, and exhibiting the improbabilities of his testimony. *Id.* The general rule is that a judge has wide latitude in imposing reasonable restrictions on cross-examination based upon concerns about confusion of the issues or interrogation that is only marginally relevant. *Board of Comm'rs of Little Rock Mun. Water Works v. Rollins*, 57 Ark. App. 241, 945 S.W.2d 384 (1997). We will not reverse unless we find a clear abuse of discretion by the trial judge in limiting the cross-examination of a witness. *Id.; see also* Ark. R. Evid. 611(b).

We do not believe that the trial judge abused her discretion in limiting appellant's cross-examination of the attorneys. First, appellants' attorney phrased his question as if he wanted Mr. Polk to admit that he believed, *at the time of the trial*, that Mrs. Deadmon had suffered from severe dementia. The trial judge thought this was irrelevant, and so do we. Second, appellants' attorney had already asked Mr. Polk what he would have done if he had known, when the documents were signed, that Mrs. Deadmon previously had been diagnosed with severe dementia. Mr. Polk had replied that he would have taken more pains to document her capacity. We cannot say that the trial judge abused her discretion in limiting appellants' cross-examination of the attorneys.

### Arkansas Rule of Evidence 608

Appellants also argue that the trial judge erred in refusing to permit them to introduce evidence that appellee obtained the signature of an incompetent, elderly relative, Leon Farr, in a nursing home on a document wherein Mr. Farr agreed to pay Mrs. Deadmon's funeral expenses and that appellee stated in an affidavit presented in a companion unlawful detainer action against Eugene that the rental value of Mrs. Deadmon's house was $100 per day. According to appellants, appellee was untruthful in this statement. They presented the testimony of Sharon Farr, who testified at trial that the rental value of the house was about $200 per month.

■ The admission of evidence is at the discretion of the trial judge, and we will not reverse absent an abuse of that discretion and a showing of prejudice. *Dodson v. Allstate Ins. Co.*, 345 Ark. 430, 47 S.W.3d 866 (2001). Arkansas Rule of Evidence 608(b) provides:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

■ The supreme court has adopted a three-part test that must be met in order for cross-examination to be undertaken pursuant to this rule: (1) the question must be asked in good faith; (2) the probative value of the evidence must outweigh its prejudicial effect; (3) the prior conduct must relate to the witness's truthfulness. *Green v. State*, 59 Ark. App. 1, 953 S.W.2d 60 (1997). The court has made it clear that cross-examination under Rule 608(b) is limited to specific instances of misconduct clearly probative of truthfulness or untruthfulness as distinguished from conduct probative of dishonesty. *Id.* In *Rhodes v. State*, 276 Ark. 203, 634 S.W.2d 107 (1982), the supreme court noted distinctions between conduct such as false swearing, fraud, and swindling (which do relate to truthfulness) and conduct such as murder, drug crimes, and assault (which ordinarily do not). In *Hill v. State*, 54 Ark. App. 380, 382-83, 927 S.W.2d 820, 822 (1996), we reversed the trial judge's refusal to admit a detective-witness's false statement to the police department and a false police report and stated: "[I]t is without question that these instances of misconduct are related to the witness's veracity and were thus probative of his capacity for truthfulness as required by the rule."

■ We believe that the trial judge abused her discretion in refusing to permit appellants to cross-examine appellee about these matters. Appellee's claim in the affidavit that the rental value of Mrs. Deadmon's house is $100 per day could be shown to be

false. Because false swearing is probative of truthfulness, this evidence should have been admitted. Also, appellee admitted that he knew Leon Farr was mentally incompetent. Appellee's behavior regarding Leon, therefore, is highly probative of his truthfulness and is especially relevant in an action to set aside a deed and trust signed by another elderly relative on the ground that appellee procured them. We also reverse on this point and direct that this evidence be admitted upon remand.

### The 1990 Document

In their final point, appellants argue that the trial judge abused her discretion in refusing to admit a copy of a document signed by Mrs. Deadmon in her attempt to make a will in 1990. That document was not attested. Appellee objected on the ground that it was not relevant to Mrs. Deadmon's mental state when the documents at issue were executed in 1998. The trial judge sustained the objection.

Appellants argue that the 1990 document should have been admitted under Arkansas Rule of Evidence 803(3). That rule provides that a statement of the declarant's then existing state of mind is not excluded by the hearsay rule. Even if the document is not hearsay, however, it must be relevant to be admitted. Ark. R. Evid. 402. Given the passage of nearly eight years between the execution of the 1990 document and the trust and deed, we do not believe that the trial judge abused her discretion in refusing to admit this evidence.

Appellants have filed a motion to revive this action and to substitute parties because of appellee's death on December 23, 2001. Appellee's attorney has objected to that motion. We deny appellants' motion without prejudice.

Affirmed in part; reversed and remanded in part.

STROUD, C.J., and BIRD, J., agree.