Virginia WELCHMAN *v.* Bobby NORMAN, Sr., and Patsy M. Norman, Kevin Coakley and Mary Lisa Coakley, and Debra Jones

92-9                                                    841 S.W.2d 614

Supreme Court of Arkansas
Opinion delivered November 10, 1992

*Hobbs, Lewis, Mitchell, Garnett & Naramore, P.A.* by: *Ronald G. Naramore*, for appellant.

*J.E. Sanders*, for appellee.

Tom Glaze, Justice. This is an appeal from the chancellor's finding that the appellant's residence violates a restriction in the appellant's deed prohibiting mobile homes. Below and here on appeal, appellant does not deny the existence of the restriction but instead contends that her residence is a manufactured home and is not covered by the restriction. Appellant also argues that the restrictive covenant is invalid because a general development plan had not been maintained in the subdivision. We are not persuaded by the appellant's arguments and therefore affirm.

Neighbors of the appellant, appellees, brought this lawsuit to force the appellant to remove her residence from her property because it violated the land use restriction against mobile homes found in both parties' deeds. This restriction provided the following: "No house trailer or mobile home shall be parked on any part of said tract nor maintained thereon for residence or other purposes." The neighbors all testified that they were worried that a mobile home on the appellant's property would adversely affect their property values.

■ On appellate review, we try chancery cases *de novo* and will not reverse the chancellor's findings unless clearly erroneous. *Conway Corporation* v. *Construction Engineers, Inc.*, 300 Ark. 225, 782 S.W.2d 36 (1989). In considering the sufficiency of the evidence to support the chancellor's finding, we view the evidence most favorable to the appellee. *Wasp Oil, Inc.* v. *Arkansas Oil & Gas, Inc.*, 280 Ark. 420, 658 S.W.2d 397 (1983).

The chancellor heard the following evidence about the appellant's residence. Appellant's residence was transported to her property in two sections. Each section had steel beams attached underneath with wheels attached. Upon arrival at the property site, the wheels, axles and tongue were removed and the two sections were put together. Concrete footings were not poured prior to the placement of the home and tie-downs or anchors were used to stabilize the home. Appellant's residence rests on concrete piers.

After the placement of the home, appellant spent approximately $5,000 in putting in a septic tank, and building a front porch, a carport and storage room. Appellant also had a rock "foundation" built around the front of her mobile home, but she testified that she did not know if the foundation supported the house absent the concrete piers. Other witnesses stated the rock "foundation" was merely a skirting around the appellant's residence. While there was evidence presented to the contrary, three witnesses, who were familiar with mobile homes, testified that the appellant's residence was a mobile home.

Other evidence before the chancellor included a copy of the Department of Finance and Administration Registration listing the appellant's residence as a mobile home.[1] Appellant's policy of insurance on her residence also lists the insured structure as a mobile home. In addition, appellant bought her residence from Quality Mobile Homes.

This court has never addressed the difference between a mobile home and manufactured home. But both parties cited the court to cases from other jurisdictions discussing the differences

---

[1] Appellant testified that when she signed the registration certificate the place for the body style was blank and that someone filled in mobile home after she signed the form.

between mobile homes and manufactured homes. The case most similar to the present case is *Albert* v. *Orwige*, 731 S.W.2d 63 (Tenn. Ct. App. 1987). There, the Orwiges also argued that their home was a manufactured home, not a mobile home. The residence was transported by truck to the property in two units. The two parts were bolted together and tied down by anchors to concrete footings. The structure was further enclosed by an additional concrete foundation. The Tennessee court held that the Orwiges' home was a mobile home.

■■ Likewise, we hold here that the chancellor's finding that the appellant's residence is a mobile home is not clearly erroneous. Witnesses identified the appellant's residence as a mobile home, and most telling, the majority of the appellant's papers concerning her residence labeled it as a mobile home. While we note the appellant's contention that, in order for the residence to be moved, the rock "foundation" would have to be removed and the wheels reattached, a majority of jurisdictions have held that a mobile home remains a mobile home notwithstanding removal of the wheels and placement on a permanent foundation. R. Anderson, *American Law of Zoning*, § 14.03, p. 675 (1986).

■■ In the second issue, the appellant argues that the restrictive covenant cannot be upheld because there is no general plan of development. We do not agree. The primary test of the existence of a general plan of development or improvement of a tract of land divided into a number of lots is whether substantially common restrictions apply to all lots of like character or similarly situated. *Jones* v. *Cook*, 271 Ark. 870, 611 S.W.2d 506 (1981). Out of the forty-three tracts in the subdivision, only six tracts, one a cemetery, were not subject to the same restrictions. As we stated in *Jones*, the mere showing of other violations does not always constitute acquiescence or waiver of the restrictions. That is the situation here.

For the reasons stated above, we affirm.